# United States Court of Appeals
# For the First Circuit

_____

Appeal No. 24-1326

IVAN F. PLACERES-MILLAN

Plaintiff - Appellant

v.

COSTCO WHOLESALE CORPORATION

Defendant - Appellee

_____

**APPEAL FROM ORDER AND JUDGMENT IN THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO**

_____

**BRIEF OF APPELLANT**

**Counsel for Appellant**

VICTOR M. RIVERA-RIOS
1ST CIR NO. 1168570
1420 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Cel: (787) 565-3477
Tel: (787) 727-5710
E-Mail: victorriverarios@rcrtrblaw.com
        info.vrr@rcrtrblaw.com

# TABLE OF CONTENTS

**SECTION**                                                        **PAGE NO.**

**TABLE OF CONTENTS** …………………………………………. i

**TABLE OF AUTHORITIES** ……………………………………. ii- iv

    **I.**      **JURISDICTIONAL STATEMENT** ………………………… 1

    **II.**     **STATEMENT OF THE ISSUES** ……………..……………… 2

    **III.**    **STATEMENT OF THE CASE** ……………………………... 2-5

    **IV.**    **SUMMARY OF THE ARGUMENT** ………………………... 5-6

    **V.**      **ARGUMENT** ………………………………………………... 6-16

        **A. This Honorable Court should reverse the District Court's Judgment because the District Court cannot superimpose its own ideas of probability and likelihood when determinations need to be made with regards to credibility and weighing the conflicting evidence such as the trial process entails** ………………. 6-16

    **VI.**    **CONCLUSION** ………………………………………..…… 16-17

    **VII.**   **CERTIFICATE OF COMPLIANCE** ……………………… 18

**CERTIFICATE OF SERVICE** ……………………………………. 19

**ADDENDUM** ………………………………………………..……… 20

<u>**TABLE OF AUTHORITIES**</u>

<u>**AUTHORITIES**</u> <u>**PAGE NO.**</u>

<u>**Cases**</u>

*Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 255 (1986) …………………………………………...... 10

*Barbour v. Dynamics Research Corp.,*

63 F.3d 32, 36 (1st Cir. 1995) …………………………………...... 9-10

*Caban Hernandez v. Philip Morris USA, Inc.,*

486 F.3d 1, 8 (1st Cir. 2007) …………………………………...... 10

*Cruz-Baez v. Negron-Irizarry,*

360 F.Supp.2d 326, 332 (D.P.R. 2005) ………………………...… 10-11

*Dominguez-Cruz v. Suttle Caribe, Inc.,*

202 F.3d 424, 432 (1st Cir. 2000) ………………………………...... 10

*Garside v. Osco Drug, Inc.,*

895 F.2d 46, 48 (1st Cir. 1990) …………………………….…...... 9

*Hannon v. Beard,*

645 F.3d 45, 48 (1st Cir. 2011) …………………………….…...... 9

*Hodgens v. General Dynamics Corp.,*

144 F.3d 151 at 168 (1st Cir. 1998) …………………….…………... 15

*Houlton Citizens' Coal. v. Town of Houlton,*

175 F.3d 178, 184 (1st Cir. 1999) ………………………………………... 9

*Molina Quintero v. Caribe G.E. Power Breakers, Inc.,*

234 F.Supp.2d 108, 113 (D.P.R. 2002) …………………………….……… 10

*Nieves-Romero v. United States*,

715 F.3d 375, 378 (1st Cir. 2013) …………………………………………... 9

*Perez-Trujillo v. Volvo Car Corp.,*

137 F.3d 50, 54 (1st Cir. 1998) …………………………………….…..…... 10

*Poulis-Minott v. Smith*,

388 F.3d 354, 361 (1st Cir. 2004) …………………………………….…... 9-10

*Reeves v. Sanderson Plumbing Prods., Inc*.,

530 U.S. 133, 150 (2000) …………………………………………………... 10

*Rogan v. City of Boston*,

267 F. 3d 24, 27(1st Cir. 2001) …………………………………………..…. 9

*Santiago-Ramos v. Centennial P.R. Wireless Corp.*,

217 F.3d 46 at 56 (1st Cir. 2000) …………………………………….…..... 15

*Simas v. First Citizens' Fed. Credit Union*,

170 F.3d 37, 49 (1st Cir. 1999) …………………………………….…..…... 10

*St. Mary's Honor Ctr. v. Hicks,*

113 S. Ct. 2742, 2749 (1993) …………………………………..….…..... 15-16

*Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*,
iii

637 F.3d 53, 56 (1st Cir. 2011) …………………………………....... 9

*Woods v. Friction Materials, Inc.,*

30 F.3d 255, 260 n.3 (1st Cir. 1994) ……………………………….… 15

**<u>Statutes</u>**

28 USC sec. 1291 ………………………………. …..…………….... 1

28 USC sec. 1332 ……………………………….……………….….… 1

29 L.P.R.A. sec. 146 *et seq.* ……………………………….………... 2

29 L.P.R.A. § 185 *et seq.* ……………………………….…………....... 2

29 L.P.R.A. sec. 194a *et seq.* ……………………………….………… 2

29 L.P.R.A. § 3111 *et seq.* ……………………………….…………. 2

**<u>Rules</u>**

Rule 56 of the Federal Rules of Civil Procedure ………………………… 9

# I.     JURISDICTIONAL STATEMENT

Jurisdiction in the District Court of the District of Puerto Rico ("District Court") was based on diversity jurisdiction under 28 USC. Sec. 1332. Specifically, Costco Wholesale Corporation ("Appellee") filed a Notice of Removal of this civil action invoking diversity jurisdiction under 28 USC. Sec. 1332. (Appendix ("App") 14-51).

Appellate jurisdiction is conferred by 28 USC sec. 1291 because this appeal is from the District Court's Judgment. The District Court entered its Judgment on March 5th, 2024 and Ivan F. Placeres-Millan ("Appellant") timely filed his Notice of Appeal on March 21st, 2024. (App 1602-1603).

## II.   STATEMENT OF THE ISSUES

This Honorable Court should reverse the District Court's Court Judgment because the District Court erred in granting summary judgment in favor of the Appellee when genuine issues of material fact were improperly disregarded. A District Court should not superimpose its own ideas of probability and likelihood and grant a Summary Judgment when determinations need to be made with regards to credibility and weighing the conflicting evidence such as the trial process entails. Therefore, Appellant requests this Honorable Court to reverse the District Court's Judgment because genuine issues of material facts existed which could lead a reasonable jury to come to a different determination that the Appellee's legitimate non-discriminatory reason to terminate the Appellant was pretextual.

## III.   STATEMENT OF THE CASE

On September 30th, 2020, the Appellant filed a complaint against the Appellee based on four causes of action under Puerto Rico law: (1) age discrimination under Puerto Rico Law 100, ("Law 100"), 29 L.P.R.A. § 146 *et seq*.; (2) retaliation under Puerto Rico Law 115 ("Law 115"), 29 L.P.R.A. 194a *et seq*; (3) workplace harassment under Puerto Rico Law 90 ("Law 90"), 29 L.P.R.A. § 3111 *et seq*.; and (4) wrongful termination under Puerto Rico Law 80 ("Law 80"), 29 L.P.R.A. § 185 *et seq*. (App. 17-51).

On October 30th, 2020, the Appellee filed a Notice of Removal invoking

diversity jurisdiction and its Answer to the Complaint. The Appellee denied the majority of the allegations of the Appellant and alleged that the Appellant was terminated with just cause. (App. 14-16, 52-78).

On August 17th, 2022, the Appellee filed a motion for summary judgment against the Appellant. In summary, the Appellee requested the District Court to dismiss all claims arguing that the evidence demonstrates that the Appellee had a legitimate non-discriminatory reason to terminate the Appellant for committing theft. (App. 79-599).

On January 11th, 2023, the Appellant filed his opposition to the motion for summary judgment. In summary, the Appellant requested the District Court to deny the Appellee's motion for summary judgment because the evidence demonstrates that the Appellee's legitimate non-discriminatory reason to terminate the Appellant for committing theft suffers from several issues related to credibility and conflicting evidence which creates genuine issues of material facts that should be evaluated by a jury such as the trial process entails. Specifically, the Appellant argued that the evidence could lead a reasonable jury to come to a different conclusion to determine that the Appellant did not commit theft, thus creating doubt as to the Appellee's legitimate non-discriminatory reason to terminate the Appellant and inferring that said non-discriminatory reason was in fact pretextual. (App. 600-1450).

The Appellee and the Appellant filed their reply and sur-reply regarding the

motion for summary judgment respectively on February 3rd, 2023 and March 6th, 2023. (App. 1451-1474, 1476-1491).

The District Court referred the motion for summary judgment and any motion related thereto to the United States Magistrate ("Magistrate") for a Report and Recommendation ("R&R"). (App. 1475).

On September 22nd, 2023, the Magistrate issued its R&R. In summary, the Magistrate understood that the motion for summary judgment should be granted in part and denied in part. The R&R correctly determined that the motion for summary judgment should be denied in part because the Magistrate determined that a genuine issues of material facts exist as to the Appellant's age-based and retaliatory hostile work environment claims under Law 100 and Law 115. However, the R&R erroneously determined that the motion for summary judgment should be granted in part as to the Appellant's termination under Law 80, thereby disregarding the evidence that could lead a reasonable jury to come to a different conclusion to determine that the Appellant did not commit theft that led to his termination. (App. 1492-1543).

The Appellee and the Appellant filed their respective objections and responses to the objections as to the Magistrate's R&R on November 6th, 2023 and November 17th, 2024. (App. 1544-1584).

On March 5th, 2024, the District Court issued its Opinion and Order adopting

in part the R&R and granting the Appellee's motion for summary judgment. The District Court erroneously determined that the motion for summary judgment should be granted and dismissed the Appellant's age-based and retaliatory hostile work environment and termination claims under Law 100, Law 115 and Law 80. Again, the District Court disregarded the evidence that could lead a reasonable jury to come to a different conclusion to determine that the Appellant did not commit theft that led to his termination. As such, the District Court erroneously issued a judgment dismissing the Appellant's claims with prejudice (App. 1585-1602).

On March 21st, 2024, the Appellant filed a Notice of Appeal regarding the District Court's Order granting Appellee's motion for summary judgment and its Judgment dismissing the Appellant's claims with prejudice (App. 1603).

### IV.  SUMMARY OF THE ARGUMENT

This Honorable Court should reverse the District Court's Court Judgment because the District Court erred in granting summary judgment in favor of the Appellee when genuine issues of material fact were improperly disregarded. A District Court should not superimpose its own ideas of probability and likelihood and grant a Summary Judgment when determinations need to be made with regards to credibility and weighing the conflicting evidence such as the trial process entails. Therefore, Appellant requests this Honorable Court to reverse the District Court's Judgment because genuine issues of material facts existed which could lead a

reasonable jury to come to a different determination that the Appellee's legitimate non-discriminatory reason to terminate the Appellant was pretextual.

## V.   ARGUMENT

**A. This Honorable Court should reverse the District Court's Judgment because the District Court cannot superimpose its own ideas of probability and likelihood when determinations need to be made with regards to credibility and weighing the conflicting evidence such as the trial process entails**

This Honorable Court should reverse the District Court's Court Judgment because the District Court erred in granting summary judgment in favor of the Appellee when genuine issues of material fact were improperly disregarded. Specifically, the District Court erroneously concluded that although Appellant's evidence could lead a reasonable jury to come to a different conclusion about whether the Appellant did or did not have permission to eat certain food in the break room, which is the basis of the theft offense that led the Appellee to terminate the Appellant, the District Court understood that said evidence does not create a reasonable inference that the Appellee's legitimate non-discriminatory reason to terminate the Appellant was pretextual.

However, the Appellant contends that the Appellee's evidence concerning the factors that motivated the termination of the Appellant suffers from serious

inconsistencies within the testimonial and documentary evidence, which demonstrates that 1) based on custom and usage food in the break room is shared amongst coworkers, and 2) the investigation was biased against the Appellant because of the inconsistent statements of the witnesses that demonstrate that the Appellant was not the person who committed theft of consuming all the food in the break room between September 12th or 13th of 2019.

With regards to establishing a *prima facie* case of discrimination and retaliation, the Appellant brought forth sufficient evidence for the same.

Specifically, the Appellant testified that he understands that the reasons for his terminations are false and he was terminated because of age discrimination, harassment and retaliation because 1) the Appellant is a 56 year old individual who was replaced by a younger person by the name of Miguel Hernandez, 2) the Appellant had submitted various complaints where he was told to stop overthinking and meddling in matters, and 3) harassment because they called him by other names and referring to him being old with jokes about being burnt out, slowness and physical ailments. (See App. 1439-1440).

Evidence was brought to demonstrate that Appellant met work expectations based on his evaluations of his functions and duties. (See App. 773-810, 1108-1114, 1439-1440). Additionally, evidence was brought to demonstrate that the Appellant was subjected to a pattern of discrimination due to a hostile work environment based

on age and retaliation. The Appellant testified that the hostile work environment got worse after the Appellant lodged various internal complaints regarding how his supervisor humiliated and disrespected the Appellant, making reference of his age and fabricating admonishments against the Appellant. (See App. 842-852, 862, 874, 1394-1426). The Appellant brought forth two witnesses which supported his claims of hostile work environment due to discrimination based on age and retaliation. (See App. 1445-1449).

However, the central issue of the District Court's error stems on it disregarding the evidence that creates a reasonable inference that the Appellee's legitimate non-discriminatory reason to terminate the Appellant was pretextual because the evidence can lead a reasonable jury to conclude that the Appellant did not commit theft, which was the basis of the termination of the Appellee. Instead, the District Court deprived the Appellant from a jury trial when it erroneously dismissed the Appellant's claims pursuant to Wrongful Termination (Unjust Dismissal) pursuant to Law 80, Discrimination based on Age pursuant to Law 100 and Retaliation pursuant to Law 115, when it superimposed its own ideas of probability and likelihood by granting the motion for summary judgment.

This Honorable Court should reverse the District Court's decision because determinations need to be made with regards to credibility and weighing the conflicting evidence that creates a reasonable inference that the Appellee's

legitimate non-discriminatory reason to terminate the Appellant was pretextual and said evidence can lead a reasonable jury to conclude that the Appellant did not commit theft, which was the basis of the termination of the Appellee.

A district court evaluates the facts of a motion for summary judgment in the light most favorable to the nonmoving party. *Houlton Citizens' Coal. v. Town of Houlton*, 175 F.3d 178, 184 (1st Cir. 1999). Summary judgment is warranted only if the record discloses no genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). "This standard is favorable to the nonmoving party, but it does not give him a free pass to trial." *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011). "To be genuine, a factual dispute must be built on a solid foundation — a foundation constructed from materials of evidentiary quality." *Nieves-Romero v. United States*, 715 F.3d 375, 378 (1st Cir. 2013); *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990). "[C]onclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative" will not defeat a summary judgment motion that complies with Local Rule 56 and Fed. R. Civ. P. 56. *Rogan v. City of Boston*, 267 F. 3d 24, 27(1st Cir. 2001).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable

inferences in that party's favor.'" *Poulis-Minott v. Smith,* 388 F.3d 354, 361 (1st Cir. 2004) (citing *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir. 1995)). "In marshaling the facts for this purpose we must draw all reasonable inferences in the light most favorable to the nonmovant. That does not mean, however, that we ought to draw unreasonable inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective." *Caban Hernandez v. Philip Morris USA, Inc*., 486 F.3d 1, 8 (1st Cir. 2007).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). See also, *Dominguez-Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments"); *Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment"); *Perez-Trujillo v. Volvo Car Corp.,* 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); *Molina Quintero v. Caribe G.E. Power Breakers, Inc.,* 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for

the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cruz-Baez v. Negron-Irizarry*, 360 F.Supp.2d 326, 332 (D.P.R. 2005).

In this case, the Appellant testified that 1) it is a work habit that several coworkers leave food on the table or refrigerator with a note that says for sharing, 2) Appellant saw four philly cheesesteak sandwiches in the refrigerator, from a box that normally contains six philly cheesesteak sandwiches, 3) Appellant consumed only one philly cheesesteak sandwich in front of two Supervisors, whom had ample authority to give the Appellant a warning and whom did not warn the Appellant that what he was doing was prohibited because the food could not be shared, and 4) Appellant did not think that he stole the sandwich because he had permission to consume it based on the sign which said that the Philly cheesesteak sandwich was for sharing. (See App. 1427-1433).

Priscilla Ortiz-Rivera ("Priscilla") testified that she was shocked that the Appellant was suspended because he took food in the break room when it is common practice that the employees of Costco leave food at the break room to be shared with other coworkers whenever they leave notes or other papers saying that it may be shared. Priscilla testified that if any issues are raised between coworkers regarding

sharing of food, most managers dismiss it as office gossip and do not take any disciplinary action. In fact, Priscilla has knowledge that on April of 2022, other Supervisors of the Appellee told Priscilla that they will not investigate an issue that was raised regarding taking of food in the break room because they considered it office gossip that did not merit an investigation. Priscilla testified that the investigation against the Appellant for the common practice of sharing food in the breakroom is a different treatment compared to other coworkers. Additionally, Priscilla testified that after the Appellant's termination, the Appellee replaced the Appellant with Miguel Hernandez who is less than forty years old and substantially younger than the Appellant. (See App. 1447-1449).

A supervisor of the Appellee, Zoi Onfri ("Onfri"), admitted that there is no video in the breakroom which captures and records the alleged act of the Appellant of taking food of other employees. (See App. 1249-1252). Additionally, Onfri admits that she has no knowledge as to whether the employees of the Appellee share or not the food in the refrigerator. (See App. 1256). Finally, Onfri admitted that the notes taken by the investigators reflects that the Appellant stated that he did not eat a philly steak sandwich on Friday, September 13th, 2019. (See App. 1259-1260).

Now credibility issues and conflicting evidence arises when the evidence demonstrates that the victim of the theft, Jonathan Hernandez ("Hernandez") admits not minding sharing food with coworkers and his only complaint was that by

September 13th, 2019 he was left without any food. The notes of the investigators reflect that Hernandez stated that he brought a Philly cheesesteak sandwich box, which contains six sandwiches, on Monday September 9th, 2019. Hernandez stated that he ate one Philly cheesesteak sandwich and he shared another Philly cheesesteak sandwich with another coworker on that same date of Monday, September 9th, 2019. Hernandez stated that on Wednesday September 11th, 2019, he saw that there were still leftover Philly cheesesteak sandwiches in the box. Hernandez stated that Thursday September 12th, 2019 was his day off and when he returned on Friday September 13th, 2019, he saw that the Philly cheesesteak sandwich box was empty. Hernandez admitted that he does not mind sharing his food with other employees if they ask permission and he would not deny food to anyone. (See App. 1013, 1061, 1263-1265).

Additional credibility issues and conflicting evidence arises when the notes of the investigators and Onfri's admissions demonstrate that the witnesses saw the Appellant consume one Philly cheesesteak sandwich on September 10th, 2019. Based on Hernandez's prior testimony that there were still leftover Philly cheesesteak sandwiches on September 11th, 2019, the Appellant had not consumed all the food. It was on September 13th, 2019 that Hernandez complains that he had to buy lunch because someone ate his sandwiches. (See App. 1266-1273).

After confronting Onfri with the notes of the investigators, Onfri admits that she is unsure about the inconsistencies between the statements of the witnesses: 1) Hernandez brought six Philly cheesesteak sandwiches on Monday September 9th, 2019, 2) that Hernandez and another coworker ate two philly cheesesteak sandwiches on Monday September 9th, 2019, 3) persons witnessed the Appellant eat one Philly cheesesteak sandwich on Tuesday, September 10th, 2019, 4) that Hernandez admitted that he saw leftover Philly cheesesteak sandwiches on Wednesday September 11th, 2019, 5) that Hernandez did not complain about the leftover Philly cheesesteak sandwiches on Wednesday September 11th, 2019, and 6) that Hernandez complained about not having any leftover Philly cheesesteak sandwiches on Friday September 13th, 2019. Finally, Onfri admitted that she did not confront the investigators to clarify the inconsistencies regarding the dates and the leftover Philly cheesesteak sandwiches. (See App. 1001-1013, 1049-1061, 1273-1278).

As this Court can note, there exists credibility issues as to the Appellant's testimonial evidence and the testimonial evidence of the Appellee. Therefore, because the evidence in the record demonstrates that there exist controversies and credibility issues as to the material facts, this Honorable Court should reverse the District Court because a jury must make the determination as to the Appellant and Appellee's testimonial evidence.

Where the elements of a sufficient *prima facie* case combine with the factfinder's belief that the ostensible basis for dismissing the employee was pretextual, "particularly if … accompanied by a suspicion of mendacity," the factfinder is permitted to infer the intentional based discrimination required to enable the plaintiff-employee to prevail on the merits. *St. Mary's Honor Ctr. v. Hicks,* 113 S. Ct. 2742, 2749 (1993) ("The factfinder's disbelief of the reasons put forward by the plaintiff (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination.") (emphasis added); *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 260 n.3 (1st Cir. 1994).

A plaintiff "can also establish pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons.". See *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46 at 56 (1st Cir. 2000) (citing *Hodgens v. General Dynamics Corp.,* 144 F.3d 151 at 168 (1st Cir. 1998).

In this case, the Appellant submitted sufficient evidence on the record that infers that there existed a use and custom of sharing food within the breakroom. Additionally, the Appellant submitted sufficient evidence that demonstrates that there were glaring omissions in the statement of Hernandez where he admits that on

September 11th, 2019 there were leftover food in the fridge, and there are no findings that the Appellant consumed Hernandez's leftover food after September 11th, 2019.

Based on testimonial and documentary evidence on the record the Appellant has created credibility issues as to the Appellee's legitimate reason to terminate the Appellant because the Appellee's legitimate reason to terminate the Appellant may be considered pretextual based on the inconsistencies as to the handling of the investigation against the Appellant. *St. Mary's Honor Ctr. v. Hicks, supra*, 2749.

Therefore, this Honorable Court should reverse the District Court's erroneous order and judgment to dismiss Appellant's claims because it did not consider the evidence cited by the Appellant which creates reasonable inferences that may be construed in favor of the non-movant Party, the Appellant, and said inferences creates controversies of the material facts which could lead a reasonable jury to come to a different determination that the Appellee's legitimate non-discriminatory reason to terminate the Appellant was pretextual.

## VI.    CONCLUSION

Based on the above, the Appellant requests this Honorable Court to reverse the District Court's Court Judgment because the District Court erred in granting summary judgment in favor of the Appellee when genuine issues of material fact were improperly disregarded. A District Court should not superimpose its own ideas of probability and likelihood and grant a Summary Judgment when determinations

need to be made with regards to credibility and weighing the conflicting evidence such as the trial process entails. Therefore, Appellant requests this Honorable Court to reverse the District Court's Judgment because genuine issues of material facts existed which could lead a reasonable jury to come to a different determination that the Appellee's legitimate non-discriminatory reason to terminate the Appellant was pretextual.

**RESPECTFULLY SUBMITTED,** in San Juan, Puerto Rico, this 25th of September, 2024.

*/S/VICTOR M. RIVERA-RIOS*
VICTOR M. RIVERA-RIOS
USDC BAR NO. 301202
1ST CIR NO. 1168570
1420 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Tel: (787) 727-5710
Cel: (787) 565-3477
E-Mail: victorriverarios@rcrtrblaw.com
        info.vrr@rcrtrblaw.com

## VII.  <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule 32 (a) (7) of the Federal Rules of Appellate Procedure, the undersigned attorney hereby certify that this brief contains 3,618 words, excluding Corporate Disclosure Statement, Table of Contents, Table of Authorities, Certificate of Compliance, Certificate of Service, and Addendum. Furthermore, pursuant to Federal Rule 32 (aa) (5) and 32 (a) (6) of the Federal Rules of Appellate Procedure, the undersigned attorneys certify that this brief has been prepared in proportionally spaced typeface using Times New Roman in 14 point.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the First Circuit by using the CM/ECF system, which will send notification of such filing to all counsel of record.

/S/VICTOR M. RIVERA-RIOS
Attorney for the Appellant

# ADDENDUM

## TABLE OF CONTENTS

<u>**DOCUMENT**</u>                                                          <u>**PAGE NO.**</u>

1.  **District Court Order Adopting in Part the R&R and Granting the Motion for Summary Judgment (Docket 91 of DCD)** ………………....  1585-1601

2.  **Judgment Dismissing with Prejudice (Docket 92 of DCD)** ………. 1602

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

IVÁN F. PLACERES MILLÁN,

    **Plaintiff,**

    **v.**

**COSTCO WHOLESALE
CORPORATION,**

    **Defendant.**

**CIVIL NO. 20-1602 (PAD) (MEL)**

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

    Plaintiff was employed with Costco Wholesale Corporation in Puerto Rico from November 3, 2010, until October 3, 2019, when he was let go for having taken coworker's food without the coworker's consent.  Following the dismissal, plaintiff initiated this action against Costco, in the main: (1) alleging to have been unjustly terminated because of his age and in retaliation for complaining to Costco about harassment from supervisors and for applying for benefits with the State Insurance Fund Corporation of Puerto Rico ("SIF"); and (2) asserting that he was subjected to workplace harassment on account of his age and in retaliation for engaging in protected activity (Docket No. 1-2).

    To this end, plaintiff relies on the Puerto Rico general anti-discrimination and anti-retaliation statues, Law No. 100 of June 29, 1959, P.R. Stat Ann. tit. 29, §§ 146, et seq. ("Law 100")(discrimination) and Law No. 115 of December 20, 1991, P.R. Stat. Ann. tit. 29, §§ 194a, et seq. ("Law 115")(retaliation); the Puerto Rico workplace bullying prevention statute, Law No. 90 of September 9, 2020, P.R. Stat. Ann. tit. 29, §§ 3111, et seq. ("Law 90"); and Puerto Rico's Unjust Discharge Act, Law No. 80 of May 30, 1976, P.R. Stat. Ann. tit. 29, §§ 185, et seq. ("Law 80"). Id.  For the reasons explained below, viewing the record in the light most hospitable to plaintiff

and indulging all reasonable inferences in that party's favor, summary judgment is appropriate as a matter of law.  In consequence, the case must be and is hereby dismissed.

## I.   **BACKGROUND**

On September 30, 2020, plaintiff initiated this action (Docket No. 1-2).  On October 30, 2020, Costco answered the complaint, admitting some allegations, denying others, and raising various affirmative defenses (Docket No. 3).   Following discovery, it moved for summary judgment (Docket No. 47), which plaintiff opposed (Docket No. 72).  Costco replied (Docket No. 77), and plaintiff sur-replied (Docket No. 83).   The court referred the motion for summary judgment to U.S. Magistrate Judge Marcos E. López (Docket No. 78), who issued a Report and Recommendation ("R&R"), recommending that Costco's motion be granted in part and denied in part (Docket No. 84).

In particular, the Magistrate Judge recommended that the discriminatory and unjust termination claims under Law 100 and Law 80 be dismissed; that the workplace harassment claim under Law 90 be dismissed; and that summary judgment be denied as to the age-based and retaliatory hostile work environment claims under Law 100 and Law 115.  Id. at pp. 51-52.  Both parties filed objections to the R&R (Docket Nos. 88 and 89).   Further, plaintiff responded to Costco's objections (Docket No. 90).  After a thorough, independent review of the record, the court adopts the R&R in part, to the extent it recommends dismissal of the discriminatory, retaliatory, and unjust termination claims under Law 100, Law 115, and Law 80 as well as of the harassment claim under Law 90.  However, it sets aside the R&R insofar as it recommends that Costco's motion for summary judgment be denied with respect to the age-based and retaliatory hostile work environment claims involving Law 100 and Law 115.

## II.   DISCUSSION

### A.   Legal Standard for Summary Judgment.

The court adopts the R&R's description of the legal standard to be applied to summary judgment requests under Rule 56 of the Federal Rules of Civil Procedure (Docket No. 84, pp. 2-3).

### B.   Uncontested Material Facts.

The court adopts the R&R's narrative of the uncontested material facts underlying the action (Docket No. 84, pp. 3-10).

### C.   Wrongful Termination (Law 80).

Plaintiff alleges that he was terminated without just cause and as such is entitled to payment of discharge indemnity under Law 80 (Docket No. 1-2, ¶¶ 115, 119).  Law No. 80 makes private-sector employers liable for payment of an indemnity to employees hired for undefined term who are discharged without just cause.  See, P.R. Laws Ann. tit. 29, § 185a (stating coverage and payment obligation).  The statute contains a general definition of just cause and provides guidance on the application of this concept through various examples relating to employee misconduct and performance, and downsizings and shutdowns.  See, Id. § 185b (setting forth general definition and examples).

A just discharge is one in which the employer provides a considered, non-arbitrary reason for an employee's termination that bears some relationship to its operation.  See, Echevarría v. AstraZeneca Pharmaceutical LP, 856 F.3d 119, 140 (1st Cir. 2017)(stating proposition).  By contrast, a discharge made by the mere whim of the employer or without cause relative to the

proper and normal operation of the establishment is not considered just.  Id.[1]  If the discharge is

deemed just, "no discharge indemnity payment is due."  Rosado-Mangual v. Xerox Corp., 2019

WL 7247776, *12 (D.P.R. Dec. 27, 2019).  In those cases, the action must be dismissed.  Id.  Along

this line, the court adopts the R&R's analysis of this claim; its conclusion that Costco terminated

plaintiff's employment with just cause, as following an investigation it had reasonable basis to

believe that plaintiff took another employee's food without consent; and that plaintiff failed to

show that Costco's stated reason for the termination was pretextual (Docket No. 84).  On this basis,

Costco's motion for summary judgment on the Law 80 claim must be granted and the claim

dismissed.

### D.  <u>Discriminatory Discharge (Law 100)</u>.

Plaintiff alleges that Costco let him go due to his age in violation of Law 100 (Docket No.

1-2, ¶¶ 86-91).  Law 100 prohibits discrimination in employment because of statutorily designated

characteristics, including age.  See, P.R. Laws Ann. tit. 29, § 146 (codifying prohibition and laying

out remedies for violation).  The court adopts the R&R's analysis of this claim; its conclusion that

given that Costco had just cause for plaintiff's termination the dismissal was not related to his age;

and that Costco's proffered reason for its decision was not a pretext for discrimination (Docket

No. 84).  That being so, Costco's motion for summary judgment on the discriminatory discharge

claim must be granted and the claim dismissed.

### E.  <u>Workplace Harassment (Law 90)</u>.

Plaintiff alleges that he was subjected to workplace harassment in violation of Law 90

(Docket No. 1-2, ¶¶ 107-114).  Law 90 was enacted to prohibit and prevent workplace bullying or

---

[1] For a detailed and comprehensive discussion of this topic, see, JORGE L. CAPÓ-MATOS, EMPLOYMENT AT WILL A STATE-BY-STATE SURVEY PUERTO RICO 936-969 (Melinda J. Caterine ed. 2011); EMPLOYMENT AT WILL: A STATE-BY-STATE SURVEY 40-15-40-22 (Melinda J. Caterine ed. Supp. 2014).

mobbing in Puerto Rico.  See, P.R. Laws Ann. tit. 29, § 1311 (stating statute's purpose).  However, it became effective on August 7, 2020, after plaintiff ceased working with Costco, and has no retroactive effect.  Id.  The court adopts the R&R's analysis and conclusion to this effect (Docket No. 84, pp. 49-50).  With this in mind, Costco's motion for summary judgment on the Law 90 claim must be granted and the claim dismissed.

### F.  Hostile Work Environment based on Age (Law 100).

Plaintiff alleges to have experienced a hostile work environment linked to his age in violation of Law 100 (Docket No. 1-2, ¶¶ 33-34).  As mentioned earlier, Law 100 prohibits employment discrimination because of age.  Age-based hostile work environments are a recognized modality of prohibited discrimination.  See, Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008)(recognizing hostile work environment claims under the Age Discrimination in Employment Act, ("ADEA")).[2]  The R&R concluded that plaintiff's supervisor, Carlos Morales, made offensive comments related to plaintiff's age and that if plaintiff and his witnesses were to be believed, those comments reached the category of a hostile work environment (Docket No. 84, p. 38).

Whether or not that evidence is sufficient to make the required showing, the record is clear that such environment originated solely with Mr. Morales, and that in June 2018, Mr. Morales was transferred to another store (Docket No. 84, p. 31).[3]  Moreover, there is no indication that plaintiff had any contact with Mr. Morales thereafter.  On that account, the last age-based hostile act or

---

[2] The merits of age discrimination claims under the ADEA and Law 100 are "coterminous."  Gonzalez v. El Nuevo Dia, 304 F.3d 63, 73 n. 7 (1st Cir. 2002).

[3] See, Docket No. 84, p. 36 ("[T]he evidence showing an age-based animus which [p]laintiff cites in order to support his age-based hostile working environment originates with his former Supervisor Carlos Morales").

behavior that plaintiff could have possibly endured from Mr. Morales must have occurred in or before June 2018.  And because Law 100 is subject to a one-year limitations period and the complaint was filed on September 30, 2020 –that is, over two years after Mr. Morales' transfer– plaintiff's age-based hostile work environment claim is time barred and must be dismissed.

### G. Retaliation (Law 115).

Plaintiff alleges that Costco violated Law 115 by, exposing him to a hostile work environment in retaliation for complaining about age-related harassment, and terminating him for applying for benefits with the SIF (Docket No. 1-2, ¶¶ 17-18; 100-103).  Discriminatory and retaliatory hostile work environment claims are "separate wrongs."  Vizcarrondo-González v. Perdue, 2020 WL 1459070, *9 n. 25 (D.P.R. Mar. 20, 2020)(citation omitted).  While the discriminatory modality "seeks to prevent injury based on who people are, i.e. their status," the retaliatory modality "seeks to prevent harm to individuals based on what they do, i.e. their conduct."  Id. (citations, quotations and emphasis omitted).

Law 115 reflects this paradigm.  Above all, the statute makes it unlawful for an employer to discharge, threaten, or discriminate against an employee who has: (1) offered or attempted to offer testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico; or (2) provided or attempted to provide testimony, expression or information in internal procedures the company has established or before any employee or representative in a position of authority as long as the expression is not of a defamatory character or constitutes disclosure of privileged information established by law.  See, P.R. Laws Ann. tit. 29, § 194a(a)(so providing).  From the general to the particular, plaintiff anchors the retaliation claim on internal complaints he lodged with Costco on April 19, 2013; January 2, 2017; and August 6, 2018 (Docket

No. 84, pp. 44, 46, 47), and as noted above, on account of having applied for benefits with the SIF

(Docket No. 1-2, ¶¶ 100-103).

### 1.   Internal Complaint of April 19, 2013.

In this complaint, plaintiff expressed, *inter alia*, that Mr. Morales yelled and humiliated

him in front of coworkers; commented that plaintiff was an "old, ugly goat" and his "brain [was]

burnt out;" and that Mr. Morales never found his performance satisfactory (Docket No. 72-9).

According to plaintiff, this complaint resulted in intensification of the mistreatment by Mr.

Morales and a counseling notice on September 27, 2013 (Docket No. 84).  This is not actionable.

The "internal complaint-related" provision of Law 115 was inserted in the statute by Law No. 169

of September 29, 2014 ("Law 169"), more than one year after plaintiff presented the complaint at

issue.  See, English translation of Law 169 included as Appendix I.

Prior to the enactment of Law 169, Law 115 did not cover this type of retaliation.  See,

Cabrera v. Sears Roebuck de P.R., Inc., 2009 WL 2461688, *9 (D.P.R. Aug. 10, 2009)(pre-2014

amendment decision to the effect that Law 115 did not prohibit retaliation in response to internal

complaints).  Further, Law 169 did not have retroactive effect.  It only became effective upon its

enactment in September 2014.  See, Appendix I, p. 5 (specifying statute's effectiveness date).

Hence, it cannot serve to impose liability for retaliation premised on this internal complaint.  By

extension, the claim should be dismissed.[4]

---

[4] Plaintiff submitted two unsworn declarations under penalty of perjury, one subscribed by Maritza Rivera López (Docket No. 72-19); the other, by Priscilla Ortiz Rivera (Docket No. 72-20).  Among other things, Ms. Rivera states that she worked from approximately 2006 to 2015 at the Bakery Department in the Costco warehouse where plaintiff worked, and has personal knowledge that plaintiff was the subject of "constant" bullying and humiliation by Mr. Morales, who would give inconsistent instructions to plaintiff; would say things like, you (plaintiff) are old and should retire; that plaintiff could not hold his pee and should wear a catheter instead of going to the bathroom all the time; and after plaintiff complained, continued with the bullying and exacerbated the hostile work environment (Docket No. 72-19).  Ms. Rivera left the Department in 2015.  Id.  For her part, Ms. Ortiz expresses that she worked in the Food Court Department at the same warehouse; as part of her duties, walked around to observe and report on the status of the different areas, and in that process spoke with plaintiff, who would tell her that his supervisor was making fun of

## 2. **Internal Complaint of January 2, 2017.**

In this complaint, plaintiff stated that he felt harassed and hounded in his job by Mr. Morales; that Mr. Morales scolded him in front of coworkers with a hostile and angry attitude, humiliated him, made him feel bad, never called him by his name, and talked to him in a loud voice; and that his personnel file was filled with coaching warnings (Docket No. 47-2).[5] According to plaintiff, Mr. Morales reacted to the complaint by threatening him with "repercussions" (Docket No. 84, p. 46). Construing this term in plaintiff's favor, it may qualify as a threat prohibited by Law 115. See, P.R. Laws Ann. tit. 29, § 194a(a)(prohibiting threats in response to protected activity). But it would not sustain liability in this case.[6]

Threats are "discrete acts." Ramsdell v. Huhtamaki, Inc., 992 F.Supp.2d 1, 16 (D. Me. 2014); Skinner v. Asset Acceptance, LLC, 876 F.Supp.2d 473, 477-478 (D.N.J. 2012)(describing a threat as a "discrete and particular act" in the context of the Fair Debt Collection Practices Act).

---

him because of his age, and that after he complained, the harassment continued and became worse (Docket No. 72-20). Additionally, she declares that she also complained about age discrimination and of a hostile work environment, and after she did so, the harassment against her worsened. Id. In 2015, she was transferred to the Hearing Aid Department, and in 2016, to the Front-End Department. Id. Given the timeframe within which Ms. Rivera interacted with Bakery Department employees, her statements necessarily refer to events surrounding the internal complaint of April 2013 and its aftermath, which as mentioned earlier, do not give rise to a retaliation action under Law 115. And to the extent it supports an age-related hostile work environment claim, for the reasons explained above, that claim is time-barred.

[5] Contrary to what plaintiff expressed, by January 2, 2017, the file only included five counseling notices (Docket No. 84, pp. 6-7). The notices refer to performance issues (Docket No. 47-2, pp. 267-280). In general, criticism, warnings and reprimands are proper instruments for management to focus the employee's attention on the need to correct "some workplace behavior that management perceive[s] as needing correction." Bhatti v. Tr. of Bos. Univ., 659 F.3d 64, 73 (1st Cir. 2011); Fernandez-Ocasio v. Walmart P.R., Inc., 94 F.Supp.3d 160, 173 (D.P.R. 2015) (same).

[6] The Fist Circuit has considered some types of threats as material adverse actions relevant to the retaliation calculus. See, Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 178-179 (1st Cir. 2015)(considering multiple threats to fire plaintiff a material adverse action). As such, those threats satisfy one of the elements required to establish a prima facie case of retaliation. Id. After a prima facie case is established, the burden shifts to the defendant to show that it had a non-retaliatory reason for the threat. Id. If the defendant does so, the burden shifts back to plaintiff to show that the defendant's reason was merely pretextual. Id. Given the basis for disposing of the threat element here, it is not necessary to examine these and other features of threats as a component of retaliation actions.

As such, they occur "on the day" that they happen. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002). From that day, they trigger running of the limitations period to pursue a claim based on them. Id. at 113. The party must act within that period or lose the ability to recover. Id. at 110. That is dispositive. Law 115 claims are subject to a three-year limitations period. See, P.R. Laws Ann. tit. 29, § 194a(b)(designating period). And given that the complaint was filed on September 30, 2020, it was untimely as to the asserted threat. To this extent, it must be dismissed. A party cannot use a termination that falls within the limitations period "to pull in the time-barred" discrete act. Morgan, 536 U.S. at 113.

At another level, retaliation essentially involves protected conduct; an adverse employment action; and a causal connection between the protected conduct and the adverse action. See, Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 36 (1st Cir. 2011)(itemizing elements); Lockridge v. The Univ. of Me., 597 F.3d 464, 473 (1st Cir. 2010)(similar). In the setting of Law 115, adverse employment actions comprise threats, termination, and actionable discrimination. The threat element was discussed earlier, and the termination factor will be elaborated on below. Neither ingredient, however, supports liability. That being so, plaintiff is left with the claim that he was subject to a retaliatory hostile work environment, which may support liability as a modality of discrimination under Law 115. See, Noviello v. City of Bos., 398 F.3d 76, 91 (1st Cir. 2005)(holding in context of Title VII of the Civil Rights Act of 1964 ("Title VII") and Massachusetts law that "subjecting an employee to a hostile work environment in retaliation for protected activity constitutes an adverse employment action").[7]

---

[7] Title VII and Law 115 "are largely symmetrical." Velez v. Janssen Ortho, LLC, 467 F. 3d 802, 809 (1st Cir. 2006).

An allegedly retaliatory act "must rise to some level of substantiality before it can be actionable." Noviello, 398 F.3d at 92.  On that basis, to successfully resist summary judgment, plaintiff must come forward with evidence that the employer's response to the protected activity was sufficiently "severe or pervasive" to alter the conditions of his employment and create an abusive work environment. González-Santiago v. Baxter Healthcare S.A., 2021 WL 1208207, *29 (D.P.R. Mar. 29, 2021)(citing Alvarado v. Donahoe, 687 F.3d 453, 461 (1st Cir. 2012)).  The abuse must be both "objectively offensive (viewed from a reasonable person's perspective) and subjectively so (as perceived by the plaintiff)." González-Santiago, 2021 WL 1208207 at *29.  To appraise the environment, courts examine all circumstances, including "the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with plaintiff's work performance." Vega-Colón v. Wyeth Pharmaceuticals, 625 F.3d 22, 32 (1st Cir. 2010).  Simple teasing, offhand comments, and isolated incidents (unless extremely serious) "will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998)(internal quotations omitted).  Where a workplace objectively falls short of the "abusive" high-water mark, it cannot sustain a hostile work environment claim. Bhatti, 659 F.3d at 74.

In this light, plaintiff has not shown that the asserted retaliatory conduct configured a hostile work environment.  By his account, he complained that Mr. Morales was "persecuting and harassing" him; "calling him names;" "making fun of him as a slow old man;" and "reprimanded him" in front of coworkers (Docket No. 90, p. 7).  He states that the situation continued and worsened after he complained (id.), a sentiment echoed by Ms. Ortiz in her unsworn declaration (Docket No. 72-20, ¶¶ 22, 24)(stating that after plaintiff filed the January 2017 complaint, "the pattern of harassment . . . continued"  and "the hostile work environment became worse").  What

has been attributed to Mr. Morales is unbecoming of a supervisor and of bad taste.  Nevertheless, it is too vague to support this claim.

To that end, see, Verrier v. BlueTriton Brands Inc, 2022 WL 3347890, *6 n. 28 (D. Me. Aug. 12, 2022)(in a sexual harassment hostile work environment action, plaintiff's statement in affidavit that she was "disparaged" by one Mr. Campbell stricken as conclusory, as plaintiff made no attempt to explain how Campbell disparaged her; how often this occurred; and what sort of conduct it entailed); Brown v. St. Univ. of N.Y., 2015 WL 729737, *6 (N.D.N.Y. Feb. 19, 2015)(in a race, gender and disability-based hostile work environment claim, plaintiff's deposition testimony, e.g., that coworker "made the workplace a hostile work environment by constantly yelling at him" and that plaintiff was "subjected to different levels of harassment" at work, deemed conclusory and thus insufficient to preclude summary judgment)(citations, quotations and brackets omitted); Hampton v. Buckhead Beef Co., Inc., 451 F.App'x 828, 830 (11th Cir. 2011)(in Title VII action for retaliation for engaging in protected activity, the employee's assertions on appeal of having been "'mistreated and shunned' and 'punished'" at work deemed too "vague and conclusory . . . [to] rise to the level of adverse employment actions").

Vagueness as to the complained of conduct leaves the court in the dark as to the conduct's severity, and lack of evidence on dates or timeframes leaves it without proof of how pervasive the alleged conduct was.  Without such information, the court and a jury could only "speculate as to the frequency and severity of the behavior."  Jones v. Fluor Facility & Plant Services, Inc., 2024 WL 713785, * 5 (W.D. Ky. Feb. 21, 2024).  Compare these evidentiary shortcomings with the factual scenarios described in Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 93 (1st Cir. 2018), where plaintiff complained that she was taunted about her age nearly every single day or nearly every single day for over two years, being called "vieja" (Spanish for "old"); told that she

was "useless;" chastised for supposedly lacking the skills necessary to adequately fulfill the roles of her job because her age rendered her "slow;" told that given her age, she should seek social security benefits, with the suggestion that because she was perceived as being too old for the job, she should resign before being forcibly discharged; and she was yelled and screamed at; Vera v. McHugh, 622 F.3d 17, 21 (1st Cir. 2010), where plaintiff was required to share an office with the alleged harasser for three months, and during that time frame she complained of constant invasion of her space, in that the harasser would sit and stare at her, block the door when she tried to leave, move his chair so that their legs were touching, and stand so close behind her that she could feel his breath; Rosario v. Dept. of Army, 607 F.3d 241, 247 (1st Cir. 2010), where record contained evidence that throughout a two-year period, a coworker complained about the plaintiff's appearance on a daily basis; regularly drew the attention of her coworkers to her body and undergarments; shadowed her closely when she interacted with patients; challenged her decisions; mocked her when she spoke to him, on occasion, described her as a street woman to other employees, and criticized her to doctors and patients; and White v. N.H. Dept. of Corrections, 221 F.3d 254, 260 (1st Cir. 2000), where record reflected daily, consistent and continuing graphically-disgusting comments.

Plaintiff is nowhere near these cases in his description of the objected to conduct.  Instead, what he has put forward resembles what courts found lacking in Verrier, 2022 WL 3347890 at *6, n. 28; Brown, 2015 WL 729737 at *6; and Hampton, 451 F. App'x at 830, referred to earlier; Reed v. Neopost U.S.A., Inc., 701 F.3d 434, 443 (5th Cir. 2012), where the court dismissed a hostile work environment claim of plaintiff who asserted that various coworkers called him names like "old man," "old fart," "pops"," and "grandpa" but provided "very little detail" regarding their nature and context, and although he alleged that the comments interfered with his job performance,

did not explain how; Ladd v. Grand Trunk Western R.R., Inc., 552 F.3d 495, 501 (6th Cir. 2009), which dismissed a hostile work environment claim of a plaintiff who alleged that she was subject to derogatory sex-based comments on a daily basis but was not specific about the allegation, and without specifics, the court found itself "limited" in drawing inferences in plaintiff's favor for purposes of summary judgment; and EEOC v. Spitzer Mgmt., Inc., 866 F.Supp.2d 851, 857-858 (N.D. Ohio 2012), where plaintiff could only recall in vague terms the specific words that he objected to and could not recount the frequency of those alleged racial comments, hence, the record contained insufficient evidence to generate a genuine issue of fact on that plaintiff's claim of a hostile work environment.[8]

Even more, taking what plaintiff has presented as sufficient to overcome vagueness problems, it still comes short as less severe or pervasive than conduct courts have held insufficient to create a hostile work environment.  See, Colón-Fontánez, 660 F.3d at 44-45 (that, among other things, the supervisor once threw plaintiff and a co-worker out of her office, yelling at them in front of other employees; when plaintiff left her desk to go to the bathroom, the supervisor or someone designated by her would follow her; and coworkers told plaintiff on several occasions to get on social security or apply for disability so that she could receive an assured check; called her a hypochondriac; and claimed she was faking it, did not raise to the level of severity or pervasiveness necessary to create a hostile work environment); Vega-Colón, 625 F.3d at 31-33 (in

---

[8] See also, Carter v. Ball, 33 F.3d 450, 461-462 (4th Cir. 1994)(dismissing hostile work environment claim in part because general allegations do not suffice to establish an actionable claim of harassment, and testimony that supervisor generally reprimanded plaintiff publicly but spoke with plaintiff's coworkers in private was not substantiated by accounts of specific dates, times or circumstances); Stone v. Bd. of Tr., 38 F.Supp.3d 935, 945 (N.D. Ill. 2014)(dismissing hostile work environment claim because allegations that supervisor required female plaintiff to clean toilets while men were excused from the same duty, with no indication of how often this occurred or how far toilet cleaning was outside plaintiff's normal duties, failed to suggest either the severity or pervasiveness of the identified harassment necessary to survive dismissal).

action under the Uniformed Services Employment and Reemployment Act, that on one occasion

a supervisor asked plaintiff if his military training was similar to the American military movie

"Rambo," that the same and another supervisor repeatedly referred to plaintiff as "soldier," "little

soldier," "sergeant," and "Rolandito," a moniker referring to a famous missing boy in Puerto Rico,

which plaintiff took to be a negative commentary on his absences for military service, found

insufficient to establish an abusive working environment; although the comments and name calling

may have been subjectively offensive, neither amounted to objectively offensive conduct, as in the

court's view, the behavior was not severe, physically threatening or humiliating, and did not

interfere with work performance to an extent that was unreasonable); Lee-Crespo v. Schering-

Plough Del Caribe Inc., 354 F.3d 34, 36 (1st Cir. 2003)(affirming summary judgment where

complained of conduct was episodic, but not so frequent as to become pervasive; was not severe;

was not physically threatening (though occasionally discomforting or mildly humiliating); and not

an impediment to plaintiff's work performance).[9]  Plaintiff's workplace may have been unpleasant,

---

[9] See also, Abrego v. Wilkie, 907 F.3d 1004, 1015-1016 (7th Cir. 2018)(that plaintiff's supervisors were hostile, short-tempered, unfairly critical, disrespectful and subjected him to excessive monitoring, not considered objectively offensive, severe or pervasive to create a hostile work environment); Hope v. Ford Motor Company, 2023 WL 2599922, * 10-11 (N.D. Ill. Mar. 22, 2023)(that during plaintiff's approximately year-and-a half tenure, his supervisor once said, referring to plaintiff, "Damn how old is he," asked plaintiff more than once about his age, made two sarcastic comments about plaintiff's age after team meetings, and stated that "this is not the 90's, the pace is fast now," did not rise to the level of severe or pervasive harassment necessary for establishing a hostile work environment claim); Hunter v. General Motors LLC, 2019 WL 1436847, * 10-11 (E.D. Mich. Mar. 31, 2019)(that plaintiff's supervisor called male workers rock stars, talked down to plaintiff, did not take her suggestions seriously, blamed her twice for two mistakes by male coworkers over a one-year period and did not permit her to work from home, not sufficiently severe, and given that plaintiff did not present much evidence regarding the frequency of the complained of conduct, the record did not show that she was subjected to a pervasive hostile work environment); Fernández-Ocasio, 94 F.Supp.3d at 173-179 (that supervisor told plaintiff that she was "good for nothing" and should apply for social security because plaintiff had said she was in pain; increased plaintiff's duties; and in approximately two-year period gave her four work-related warnings and a "below expectations" performance review before termination, considered insufficient to create a retaliatory hostile work environment).  Compare these cases with Noviello, 398 F.3d at 82-83, 92-94, where after plaintiff lodged a sexual harassment charge against shift supervisor, she was falsely accused of throwing a tampon at a coworker; she was referred to as "rat" and "scum of the earth;" she was taunted with a collection on behalf of supervisor she had complained about; she was left by herself during a snowstorm when a coworker refused to pick her up in derogation of departmental policy; she was nearly struck by a van (when she approached a van used to transport parking enforcement officers to their posts, the driver saw her approach, closed the van's door, ignored the plaintiff's tapping on the window and drove away, almost hitting the plaintiff); she was lied to when told that all

but did not carry the degree of abuse necessary to constitute a hostile work environment.   Thus,

the retaliation claim based on the complaint of January 2, 2017, must be dismissed.

### 3.   **Internal Complaint of August 6, 2018.**

In this complaint, plaintiff mentioned that he was feeling hounded and harassed by the

Fresh Department Manager Patricia Sullivan and the Bakery Department Manager Josue

González, who called him to meetings almost monthly to discuss his poor performance at work,

that his job was poorly done, the quality of the products, that he was not productive, and that he

was making comments about coworkers that did not get along with him, which plaintiff denied,

stating that this information was false (Docket No. 47-2, p. 322).[10]  More than one year later, on

August 16, 2019, plaintiff received a counseling notice, and on October 3, 2019, he was dismissed

(Docket N0. 84. Pp. 7, 10).  Id.

This period is far too long to create an inference of causation flowing from the August 2018

complaint to these subsequent events.  In a similar vein, because Mr. Morales had been transferred

to a different store in June 2018, over a year before the counseling notice and termination, no

comments by him generate or support an inference of retaliatory animus.  And plaintiff did not cite

additional evidence, such as comments by other decisionmakers, that would overcome the year-

long gap between the August 2018 complaint, the August 2019 counseling notice, and October

---

[10] personnel on her shift had to take their dinner breaks separately (she was the only person who had been told to eat alone); a new employee was told to stay away from the plaintiff because she was trouble; another employee told a coworker that plaintiff's "payday" was drawing near; and when plaintiff complained to a high-level supervisor, the supervisor told her she did not think that the harassment would stop, but rather, that it would become ten times worse. From the record, plaintiff falls outside the Noviello zone of the spectrum.

[10] As noted in Note 5, in general, criticism, warnings and reprimands are proper instruments for management to focus the employee's attention on the need to correct some workplace behavior that management perceives as needing correction.

2019 termination.[11]  In consequence, the retaliation claim based on the August 2018 counseling

notice must be dismissed.

### 4.  SIF.

Plaintiff alleges that he was terminated in retaliation for having requested benefits from the

SIF after he supposedly developed nervousness, anxiety, and chest pain in connection with the

food theft incident (Docket No. 1-2).  The SIF is part of Puerto Rico's worker's compensation

system created by the Commonwealth's Workmen's Accident Compensation Act, Law No. 45 of

April 18, 1935, P.R. Stat. Ann. tit. 11 § 1 et seq., to provide benefits for work related injuries to

employees.  See, Feliciano-Rolon v. Ortho Biologics LLC, 404 F. Supp. 2d 409, 413-414 (D.P.R.

2005)(describing statute).  As the Magistrate Judge observed in the R&R, however, the retaliation

claim fails because Costco's decision to terminate plaintiff's employment was made before he

turned to the SIF for assistance, prior to knowing that he had done so (Docket No. 84, pp. 42-43).

No protected conduct following an adverse employment action "can serve as the predicate for a

retaliation claim."  Pearson v. Mass. Bay Transp. Auth., 723 F.3d 36, 42 (1st Cir. 2013).  Causation

moves forward, not backwards.  Id.

Furthermore, while seeking SIF benefits is considered a "protected activity" within the

scope of Law 115, Santana-Colón v. Houghton Mifflin Harcout Pub. Co., 81 F.Supp.3d 129, 136

(D.P.R. 2014), the employer prevails under Law 115 when it shows a "legitimate," non-pretextual

reason for the challenged action.  González-Santiago, 2021 WL 1208207 at *39.  Costco made this

showing, demonstrating just cause to terminate plaintiff's employment.  Therefore, the SIF-based

retaliation action must be dismissed.  See, Casta v. Citi Int'l Fin. Serv., LLC, 2020 WL 7670122,

---

[11] Parenthetically, the same fatal gap exists with respect to the internal complaints of April 2013 and January 2017, as they are too temporarily remote from the firing to create an inference of retaliation as to it.

*12-14 (D.P.R. Dec. 23, 2020)(dismissing retaliation claim of employee let go with just cause after returning from SIF-protected leave of absence).[12]

### III.    <u>CONCLUSION</u>

Having made an independent, *de novo* examination of the entire record, the court ADOPTS IN PART the Magistrate Judge's R&R (Docket No. 84) as stated herein; GRANTS defendant's motion for summary judgment (Docket No. 47); and DISMISSES the case.  Judgment shall be entered accordingly.

**SO ORDERED**.

In San Juan, Puerto Rico, this 5th day of March, 2024.

s/Pedro A. Delgado-Hernández<br>
PEDRO A. DELGADO-HERNÁNDEZ<br>
United States District Judge

---

[12] Plaintiff cites <u>Arroyo</u> v. <u>Rattan Specialties</u>, 117 P.R. Dec. 35 (1986), for the proposition that when the dismissal of an employee has the effect of frustrating or subverting a clear public policy, the employee has the right to claim damages and being reinstated in his employment (Docket No. 1-2, ¶ 99).  In <u>Arroyo</u>, the Puerto Rico Supreme Court held that the employer violated the employee's right to privacy, dignity, and personal integrity when it dismissed him for refusing to submit to a polygraph test.  <u>Id</u>. at 65-66.  The Supreme Court considered the employer's property interest as well as the characteristics of the polygraph test, the test's trustworthiness, the potential for intrusion on the employee's mind, and the employee's inability to prevent the test from registering his physiological reactions, concluding that the employee's constitutional rights outweighed the employer's interest in the absence of special circumstances justifying the test such as grave danger to the social order or any other compelling state interest that could justify testing.  <u>Id</u>. at 61-62.  No one here required plaintiff to submit to a degree of intrusion analogous to what a polygraph test entails.  As well, for the reasons discussed above, Costco did not violate public policy in terminating plaintiff's employment.

Appellant Appendix 1601

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

IVÁN F. PLACERES MILLÁN,

       Plaintiff,

         v.

COSTCO WHOLESALE
CORPORATION,

       Defendant.

                   CIVIL NO. 20-1602 (PAD)

**JUDGMENT**

In accordance with the Memorandum and Order issued today (Docket No. 91), judgment is hereby entered dismissing this case with prejudice.

This case is now closed for statistical purposes.

**SO ORDERED.**

In San Juan, Puerto Rico, this 5th day of March, 2024.

                      s/Pedro A. Delgado-Hernández
                      PEDRO A. DELGADO-HERNÁNDEZ
                      United States District Judge